NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re | |
| **MEGAN KATHLEEN GRIFFIN,** | Case No. **9:23-bk-90128-BPH** |
| Debtor. | |

# MEMORANDUM OF DECISION

## I.  Introduction.

In this Chapter 7 bankruptcy, Debtor reopened her case after receiving a discharge and moved for sanctions, alleging multiple violations of the discharge injunction by creditor Community Medical Center ("Creditor"). For the reasons stated below, the Court grants Debtor's motion for sanctions and awards Debtor damages in the amount of $9,917.76.

## II.  Procedural Background.

Debtor filed a Chapter 7 bankruptcy on July 27, 2023, and received her discharge on November 9, 2023, resulting in the closure of her case. Debtor filed a "Motion to Reopen" on February 20, 2024.[1] The Court subsequently granted the Motion on February 21, 2024.[2]

Debtor filed a "Motion for Sanctions for Violations of the Discharge Injunction" on February 21, 2024 ("Motion"),[3] detailing Creditor's alleged actions in violation of 11 U.S.C. § 524(a), and a subsequent "Notice" on March 11, 2024 ("Notice")[4] informing the Court of further actions by Creditor. The Motion was mailed to Creditor at the following addresses:

Community Medical Center
2827 Fort Missoula Rd.
Missoula, MT 59804-7408

Community Medical Center
Attn: Bob Gomes, CEO
2827 Fort Missoula Rd.
Missoula, MT 59804-7408

---

[1] ECF No. 15.

[2] ECF No. 16.

[3] ECF No. 17.

[4] ECF No. 19.

The Court's Bankruptcy Noticing Center additionally served the Motion on Creditor at the same mailing address. Creditor did not respond to the Motion.

The Court issued an order setting the Motion for hearing.[5] The Court construed Creditor's failure to respond to Debtor's Motion as an admission that Debtor's requested relief should be granted and limited the scope of the hearing to damages since Debtor's Motion was unopposed. The hearing was held on April 11, 2024. The Order was mailed to Creditor at the same address as the Motion.

At the hearing, appearances were noted for the record. No representative for Creditor appeared. Absent objection, Exhibits 1-9 were admitted. Debtor Megan Kathleen Griffin provided testimony.

After the hearing, counsel for Debtor filed an "Affidavit of Nik Geranios" on April 16, 2024,[6] indicating the fees and costs he incurred in connection with this matter totaled $3,787.76 ("Affidavit"). Debtor additionally filed a "Report to the Court" on the same date ("Report"),[7] indicating that Debtor spent approximately five hours on the matter when she should have been working.

## III. Factual Background.

At the hearing, Debtor testified that she is a single mother. Unable to maintain payments on her debt, she filed bankruptcy. Debtor testified her bankruptcy was "shameful and embarrassing," but she did not have a choice.

Debtor provided notice to Creditor of Debtor's bankruptcy.[8] She received her discharge, and Creditor was again provided notice.[9] Debtor testified that Creditor did not attempt to contact her during her bankruptcy. After her discharge, however, Creditor pursued collection of its discharged debt from Debtor.

---

[5] The order was issued on March 13, 2024, at ECF No. 21 ("Order").

[6] Ex. 29.

[7] Ex. 30.

[8] Ex. 1.

[9] Ex. 2.

Debtor initially received an invoice from Creditor on December 21, 2023, causing her to review whether she had inadvertently omitted Creditor.[10] She called Creditor on or about January 3, 2024, and explained that the debt had been discharged. A representative of Creditor told her that the representative could not help her, but that a manager would contact her. No one did. Debtor called again on January 5, 2024. The representative of Creditor told her she did not know what information Creditor needed to resolve the matter. Debtor then informed her counsel.

Debtor received another invoice on January 12, 2024.[11] Counsel for Debtor sent notice to Creditor on January 25, 2024, that any further attempts to contact Debtor for discharged debt would result in Debtor seeking sanctions.[12] This did not deter Creditor, however. Creditor sent a "Final Notice" on February 12, 2024.[13] Debtor feared she would have to pay this debt. Creditor continued to attempt to contact Debtor via calls.[14] Debtor testified that Creditor called her approximately six separate times. Finally, Creditor wrote off the balance on February 29, 2024.[15]

When Debtor continued to receive these calls and notices, it caused Debtor's stress-induced irritable bowel syndrome and general anxiety disorder to flare-up. Additionally, Creditor's attempts caused her son distress, making her "feel like a failure" and "like she failed her child."

Debtor testified she earns 26 dollars an hour. Debtor spent five hours, including the time spent at hearing, attempting to resolve the matter. Altogether, Creditor attempted to contact Debtor regarding its discharged debt at least ten separate times.

## IV.    Debtor's Argument.

The Motion alleges that Creditor has repeatedly pursued collection of its discharged debt in violation of 11 U.S.C. § 524(a), despite fruitless efforts by Debtor and her counsel to inform Creditor of the discharge injunction. Debtor additionally filed the Notice, alleging that Creditor attempted to further collect from Debtor before sending Debtor an invoice that it had written off the balances owed. The Motion requests a finding of civil contempt, an award of compensatory damages to Debtor, a coercive fine, and attorneys' fees and costs pursuant to 11 U.S.C. § 524(a)(2) and 11 U.S.C. § 105(a).

---

[10] Ex 3.

[11] Ex. 4.

[12] Ex. 5.

[13] Ex. 7.

[14] Ex. 6; Ex. 8.

[15] Ex. 9.

## V. Applicable Law.

### A. 11 U.S.C. § 524(a) and 11 U.S.C. § 105(a).[16]

Section 524 of the bankruptcy code provides that discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). A party who knowingly violates the discharge injunction can be held in civil contempt under 11 U.S.C. § 105(a). *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006). Pursuant to 11 U.S.C. § 105(a),

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

A court may impose civil contempt sanctions pursuant to 11 U.S.C. § 105(a) when there is "no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801 (2019).

### B. Damages allowed under 11 U.S.C. § 105(a).

"Civil contempt sanctions are designed to coerce compliance and to compensate for losses, including costs and attorneys' fees, stemming from noncompliance with the injunction." *In re LeGrand*, 612 B.R. 604, 612 (Bankr. E.D. Cal. 2020). Section 105(a) contains no explicit grant of authority to award punitive damages. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1193 (9th Cir. 2003). Rather, "the language of § 105(a) authorizes only those remedies necessary to enforce the bankruptcy code." *Id.* The sanctions associated with civil contempt (compensatory damages, attorney fees, and the offending creditor's compliance) meet that goal, rendering "serious punitive sanctions unnecessary." *Id.* However, "relatively mild" non-compensatory fines may be necessary under some circumstances. *Id.*

Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 871 (9th Cir. 2017). Emotional distress damages are a form of compensatory damages and are not punitive. *Hunsaker v. United States*, 902 F.3d 963, 968 (9th Cir. 2018).

Notably, there is no controlling law in the Ninth Circuit as to whether emotional distress damages for violation of the discharge injunction may be included in compensatory damages. *In re Breul*, 533 B.R. 782, 796 (Bankr. C.D. Cal. 2015). However, the general trend among trial courts in this circuit is to allow emotional distress damages. *See, e.g., Id.*; *In re Go*, 651 B.R.

---

[16] Although Debtor's Motion was unopposed, Debtor introduced evidence that supported the allegations in the Motion, so the Court will address Creditor's conduct and liability.

891, 903 (Bankr. D. Nev. 2023); *In re Nordlund*, 494 B.R. 507, 522 (Bankr. E.D. Cal. 2011). To recover for emotional distress, the individual must suffer a significant harm, must clearly establish the significant harm, and must establish a causal connection to the conduct. *See, e.g., In re Breul*, 533 B.R. at 797. Emotional distress may be "readily apparent" without need for medical evidence or corroborating testimony, such as when a creditor engages in egregious conduct or the circumstances may make it obvious that a reasonable person would suffer significant emotional harm. *Bauer v. Northeast Neb. Fed. Credit Union (In re Bauer)*, 2010 Bankr. LEXIS 5096, at *24 (B.A.P. 9th Cir. 2010). Fleeting or trivial anxiety or distress does not suffice to support an award. *In re Breul*, 533 B.R. at 797.

  The record is devoid of any explanation for Creditor's conduct. Absent any explanation, having considered the evidence presented the Court can neither conclude that Creditor's conduct was lawful nor discern any reasonably objective basis for the conduct. If the conduct had occurred shortly after the discharge was entered and immediately ceased, one may conclude there was a delay in Creditor's receipt of the order granting discharge. Instead, Debtor was contacted approximately 30 days after she received her discharge and continued to be contacted over the next 70 days, despite contacting Creditor and advising she had received her discharge.

### a. Debtor is awarded $4,917.76 in compensatory damages.

  11 U.S.C. § 105(a) allows the award of compensatory damages in the event of a discharge violation. Here, Debtor employed the services of counsel after Creditor continued to pursue its discharged debt. Counsel's Affidavit states that he incurred fees and costs in the amount of $3,787.76. Debtor is entitled to an award in that amount.

  The Report further indicates that Debtor missed approximately five hours of work in connection with this matter. Debtor is entitled to compensation in the amount of five hours x her hourly rate of $26.00 ($130.00 in sum).

  Additionally, the Court will award emotional distress damages to Debtor. Debtor's testimony was candid, credible, and uncontroverted. Based on her testimony and the introduced exhibits, Debtor meets the three prongs necessary to establish emotional distress. First, although Debtor provided no medical evidence, her testimony made obvious the strain that Creditor's action had placed upon her and her son. Second, Debtor testified that Creditor's actions caused Debtor's stress-induced irritable bowel syndrome and general anxiety disorder to flare-up, establishing the significant harm. Third, Debtor endured Creditor's repeated attempts to contact Debtor despite being placed on notice of Debtor's discharge no less than four separate times, making it clear that Creditor's behavior caused Debtor's distress. Accordingly, under these circumstances a reasonable person would suffer emotional harm. The Court will award $1,000.00 in emotional distress damages to Debtor.[17]

---

[17] Absent medical evidence and corroborating testimony, the Court is reluctant to award more. This is in line with other decisions throughout the circuit involving violations of the discharge injunction. *Compare In re Breul*, 533 B.R. at 797 (emotional distress damages award of $5,000.00 appropriate despite no medical evidence or corroborating testimony) *with In re*

In sum, the Court awards compensatory damages in the amount of $3,787.76 in connection with Debtor's counsel's fees and costs, $130.00 for Debtor's time spent missing work, and $1,000.00 in emotional distress damages, altogether totaling $4,917.76.

### b. Debtor is awarded $5,000.00 in non-compensatory damages.

Based on Debtor's uncontroverted testimony and the record before it, Creditor attempted to contact Debtor ten separate times. Debtor and her counsel's attempts to dissuade Creditor were unavailing. Debtor's testimony regarding her failed attempts to explain the import of her discharge to Creditor - and Creditor's representatives' confusion surrounding the scope of her discharge injunction - suggest that Creditor does not have the proper systems in place to comply with its duties under the Bankruptcy Code. The Court finds it further troubling that Creditor ceased collection efforts during the pendency of Debtor's bankruptcy case but began to pursue the discharged debt immediately after Debtor's case was closed. Such behavior suggests that Creditor is aware of the automatic stay and, at best, ignorant of the discharge injunction and its import. Alternatively, it has inadequate systems in place for handling a notice of bankruptcy filing and the subsequent filings, including an order granting a debtor a discharge.

Although the Court cannot be certain if this is an isolated incident or indicative of a larger problem, to encourage Creditor's compliance with the Bankruptcy Code and the discharge injunction, it will award Debtor $500.00 for each of the ten times Creditor contacted her post-discharge, totaling $5,000.00.[18]

## VI. Conclusion.

Throughout this entire process, Creditor has been a ghost. It did not respond to Debtor's pleas, counsel's demand letter, motion for sanctions, or appear at the hearing. As such, the Court can only speculate as to any procedures or policies it has in place to avoid the position it finds itself in today. While the Court will not require Creditor to assess its procedures related to the collection of debt, particularly whether its collection procedures comply with its requirements under the Bankruptcy Code, Creditor may find itself well-served to do so on its own initiative.

For the reasons stated above, Debtor is entitled to an award of damages in the amount of $9,917.76. An Order will be entered separately.

Dated April 29, 2024.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

---

*Nordlund*, 494 B.R. at 507 (emotional distress damages award of $35,000.00 appropriate after corroborating testimony from debtor's mental health professional).

[18] This amount comports with prior decisions by this Court. *See In re Lewis*, 2017 Bankr. LEXIS 928, at *9 (Bankr. D. Mont. 2017) (awarding $500.00 for each attempt by creditor to contact the debtor regarding discharged debt).